MAINE LAND USE REGULATION
COMMISSION

v.

Elijah and Beverly WHITE.

Elijah and Beverly WHITE

v.

MAINE LAND USE REGULATION
COMMISSION.

Supreme Judicial Court of Maine.

Argued Sept. 15, 1986.
Decided Feb. 27, 1987.

James E. Tierney, Atty. Gen., Paul Stern, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Skelton, Taintor, Abbott & Orestis, Laurie A. Gibson (orally), Charles H. Abbott, Auburn, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Elijah and Beverly White appeal from two judgments of the Superior Court, Franklin County. In CV 81–37 the court imposed a $25,000 civil fine against the Whites for cutting timber in a deer wintering area (DWA) without a permit from the Maine Land Use Regulation Commission (LURC) in violation of 12 M.R.S.A. § 685–C (1981) and LURC Reg. § 10.16(C)(3)(b)(1). In CV–81–129 the court affirmed LURC's denial of the Whites' petition pursuant to 12 M.R.S.A. § 685–A(8) (1981) for removal of the wildlife habitat protection zone from the DWA on their property in Freeman Township. In the first case the Whites question the validity of the original zoning and the sufficiency of the evidence to support the fine imposed. In the second case the Whites challenge the commission's decision as unsupported by substantial evidence as well as on various constitutional grounds. We affirm the judgment in CV 81–129. In CV 81–37 we remand for a recalculation of the civil fine.

I.

LURC serves as a zoning agency for the unorganized areas of the state. Pursuant to 12 M.R.S.A. § 685–A (1981 and Supp. 1986) the commission adopted interim zoning to regulate timber harvesting for the protection of deer wintering areas (DWA). The interim zoning was subsequently replaced by a permanent Fish and Wildlife Protection Subdistrict (P–FW). Before the permanent zoning is adopted, the Department of Inland Fisheries and Wildlife (IFW) seeks an agreement with the landowner as to the area to be designated. In the absence of an agreement, IFW must substantiate the existence of a DWA by on-site observations. LURC Reg. § 10.-16(C)(2)(b)(2). Ultimately the commission must decide upon permanent zoning after a hearing conducted in accordance with subsection 685–A(7).

The Gilkey Brook DWA involved in the case at bar was protected by a permanent P–FW subdistrict adopted by the commission at a hearing in August of 1977. The hearing followed an agreement between IFW and the then owner of the Whites' farm, Clinton Weymouth. When the Whites purchased the 102 acre farm in 1978, 61 acres were already included in the permanent wildlife habitat protection zone.

Harvesting timber in a permanent P–FW is prohibited unless the owner obtains a plan agreement with IFW (subject to commission's disapproval) or obtains a permit from the commission. LURC Reg. §§ 10.-16(C)(3)(a)(12) and 10.16(C)(3)(b)(1). In November 1978, after the Whites unlawfully cut nine acres of timber in the Gilkey Brook DWA, they and IFW reached a plan agreement that allowed selective cuttings in certain portions of the DWA.

In February and March of 1981 the Whites cut extensively in the DWA in violation of the November 1978 plan agreement. LURC filed its complaint in CV 81–37 asking that the court impose civil penalties and enjoin further cutting. The parties permitted a temporary restraining order to remain in effect while the Whites petitioned the commission to remove the P–FW designation from their 61 acres in the DWA. After a hearing the commission denied the requested change in September of 1981. The Whites' complaint in CV 81–129 for direct review of the commission's denial pursuant to 12 M.R.S.A. § 689 (1981) and 5 M.R.S.A. § 11001 (1979 and Pamph.1986) was consolidated with the pending action in CV 81–37. The Whites engaged in additional unlawful cutting of timber in the spring of 1985. Trial of the consolidated actions resulted in the judgments being entered in March of 1986.

## II.

■ In CV 81–37 the Whites challenge the validity of the commission's adoption of the permanent P–FW designation on the grounds that Weymouth's 1977 agreement was ineffective to bind his co-owner (Weymouth's wife) and could not create a valid easement. This argument misconstrues the nature of LURC's zoning. Whether the landowners agreed or not, it was the action of the commission after hearing on the P–FW zoning proposal that effectively

enacted the protective zoning. Whether Mrs. Weymouth could have challenged the decision pursuant to section 689 and section 11001, we need not decide. No such challenge was attempted within the requisite appeal period [1] and appellants now suggest no basis for voiding the decision.[2]

■ The Whites also contend that the court could not properly consider the 1985 cutting. They concede that the court granted LURC's motion to amend its complaint to allege the 1985 cutting. They assert, however, that no supplemental amended complaint was ever served or filed. In fact, the motion itself contained a sufficient statement of the additional allegations. Any claim of prejudice on the part of the Whites is unsupported on the record before us.

■ We find greater merit in appellants' argument that the court erred in its assessment of the civil fine on the basis of $500 per tree cut. Section 685–B(1)(C) prohibits the commencement or operation of any development without a permit from LURC. Section 682(7) defines development as "any land use activity directed toward using, reusing or rehabilitating air space, land, water or other natural resources". In addition LURC Reg. § 10.16(C)(3)(b), with an exception not pertinent to the case before us, specifies that timber harvesting is an activity for which a permit is required. Finally, section 685–C(8) provides that any violation is punishable by a fine of up to but not more than $500 for each day of the violation. By engaging in timber harvesting without a permit, the Whites are exposed to a maximum fine of $500 for each day of timber harvesting.

■ LURC contends that, because cutting a single tree could cause a violation, each tree cut must constitute a separate violation that would authorize a separate fine. LURC's view is not supported by the

---

1. Section 689 expressly incorporates the provisions for judicial review contained in 5 M.R.S.A. § 11001 (review of adjudicatory proceedings) and not 5 M.R.S.A. § 8058 (review of agency rule). Consequently, LURC's zoning decision became final and binding as to the Whites'

predecessors-in-interest. *See Maines v. Secretary of State,* 493 A.2d 326 (Me.1985).

2. Our analysis of appellants' challenge to the validity of LURC's zoning also disposes of their claim that the Weymouth agreement should have been recorded in the Registry of Deeds.

plain language of either the statutes or the regulations. Engaging in the activity of timber harvesting without a permit is the activity punishable by the day. Whether the penalty provides adequate deterrence to accomplish the legislative purpose is not for us to say. Because the court used an incorrect basis for assessment of the fine, we vacate that portion of the judgment and remand for recalculation of the fine.

### III.

■ In CV 81–129 the Whites contend that the denial of their petition to rezone their land was unsupported by substantial evidence. They point to the fact that after they had unlawfully clear cut most of the 61 acres, the area no longer met the commission's own criteria for P–FW zoning contained in LURC Reg. § 10.-16(C)(2)(b)(2)(b). Not only do the Whites seek to advance their cause by their own continued violations, but they ignore the very next sentence following the criteria they cite. Subsection (b) provides that a P–FW subdistrict protecting a DWA shall not be reduced in size as a result of cutting that causes the area to no longer satisfy the criteria. Because *lawful* cutting will not reduce the P–FW zone, obviously *unlawful* cutting ought not require any different result. The evidence adequately supports LURC's decision to retain the P–FW designation in preference to the Whites' proposal to convert the area to pasture land.

The Whites also challenge LURC's rezoning decision on constitutional grounds. Although the argument is a transparent attempt to avoid the res judicata effect of LURC's permanent zoning decision, the appellee does not assert such a preclusive effect. In any event, we conclude that the Whites' contentions are disposed of by *Seven Islands Land Company v. Maine Land Use Regulation Commission,* 450 A.2d 475 (Me.1982).

■ The Whites attempt to distinguish *Seven Islands* on the disparate percentage of their total acreage affected by the zoning as compared to the percentage impact in *Seven Islands.* As applied to the Whites' "taking without compensation" argument based on the fifth and fourteenth amendments to the United States Constitution and Article I, Section 21 of the Maine Constitution, the attempted distinction is unavailing for two reasons. First, the "taking", if any, occurred at the time of LURC's permanent zoning decision before the Whites acquired the property. Second, the record demonstrates on the basis of the Whites' own testimony that the property has not been substantially reduced in value.

■ The Whites' other *substantive* claims of unconstitutional state action are likewise controlled by *Seven Islands.* Moreover, their assertion of *procedural* due process violation is without merit. Contrary to the Whites' argument, the agreement with Weymouth was not a grant of an easement nor was its recording necessary to give notice to subsequent purchasers. The filing in the Registry of Deeds of LURC's zoning maps as required by section 685–A(7) provides adequate notice to purchasers. Thus, even if the Whites are permitted to raise the procedural due process issue through the vehicle of their petition to rezone, they have established no procedural deprivation.

We conclude that no other issue in either case merits discussion in these appeals.

The entry is:

In CV 81–129, judgment affirmed.

In CV 81–37, civil fine vacated. Remanded for recalculation of the fine. In all other respects, judgment affirmed.

All concurring.